IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


ROBERT T. FOBES                                                            PLAINTIFF

VS.                                            CIVIL ACTION NO. 1:15cv316-HSO-FKB

CAROLYN W. COLVIN, COMMISSIONER                                 DEFENDANT
OF SOCIAL SECURITY ADMINISTRATION

---

## REPORT AND RECOMMENDATION

This cause is before the Court regarding the appeal by Robert T. Fobes of the

Commissioner of Social Security's final decision denying Fobes's application for Disability

Insurance Benefits ("DIB").  In rendering this Report and Recommendation, the Court has

carefully reviewed the Administrative Record [5] regarding Fobes 's claims (including the

administrative decision, the medical records, and a transcript of the hearing before the

Administrative Law Judge ("ALJ")), Plaintiff's Motion for Judgment on the Pleadings [8],

Memorandum Brief [9], and Defendant's Memorandum in Opposition to the Motion for

Judgment on the Pleadings and to the Complaint [10].

For the reasons discussed in this Report and Recommendation, the undersigned finds that

the Commissioner's decision should be affirmed.  Accordingly, Plaintiff's Motion [8] should be

denied.

## I. PROCEDURAL HISTORY

This appeal represents Fobes's second application for disability benefits.  Fobes first

applied for DIB on May 29, 2008, and, after a hearing, the application was denied on October 5,

2010.  [5] at 13.[1]  His subsequent appeal to the Appeals Council was denied on April 13, 2012.

*Id.*  Because Fobes did not appeal that decision to the District Court, the decision became final as

to Fobes's right to benefits on or before October 5, 2010.  *Id.*

Fobes filed a second application for a period of disability and DIB on December 14,

2012, and alleged a disability onset date of February 26, 2008.  *Id.*  In the course of reaching her

decision, the ALJ reasoned that, pursuant to *res judicata*, the prior decision barred consideration

of the period preceding and including October 5, 2010, the date of Fobes's first benefits decision.

*Id.*  Fobes's earning record demonstrated that he had acquired sufficient quarters of coverage to

remain insured through December 31, 2013.  *Id.* at 14.

Fobes was born on August 3, 1965, and he was forty-eight years of age on the date he

was last insured.  *Id.* at 23.  Thus, he was considered a "younger person" under the regulations.

20 C.F.R. § 404.1563(c).  Fobes graduated high school, attended one year of college, and

attended multiple military technical schools.  [5] at 33, 70, 221.  He served in the Air Force as a

helicopter mechanic from April 1984 to June 1996, and he is also a licensed aircraft mechanic.

*Id.* at 34, 222, 647.  Fobes was most recently employed as a service technician for a commercial

and coin laundry from November 2005 to February 2008.  *Id.* at 33, 222.  He testified that he last

worked on February 27, 2008, after he fell and suffered an on-the-job injury on December 27,

2007, that required treatment on both shoulders.  *Id.* at 33-34, 42, 70.  In his first hearing, he

testified that he also struck his head on a steel rail and landed on his tailbone during the fall.  *Id.*

at 33.

In April 1993, while in the military, Fobes was diagnosed with pulmonary sarcoidosis.

---

[1]Citations reflect the original pagination of the administrative record.

*Id.* at 37, 426.  On November 4, 2013, the Board of Veterans' Appeals issued a decision finding that Fobes's "arthropathy of the hands, elbows and hips was caused by a service-connected disability," that of pulmonary sarcoidosis, which the Board had found as thirty percent (30%) disabling.  *Id.* at 646, 648, 651-652.

In his request for disability, Fobes alleged that he is disabled due to several conditions: renal failure, multiple surgeries, mood disorders, back, sarcoidosis, depression, multiple shoulder surgeries, multiple knee problems, peripheral neuropathy, sleep disruptions, chronic pain, anxiety, and acid reflux.  *Id.* at 220.  He maintains that his sarcoidosis has worsened since his 2007 fall and now causes joint pain, in addition to pain caused by arthritis.  *Id.* at 46, 78-79, 85.

The Social Security Administration denied Fobes's application initially and upon reconsideration. *Id.* at 127, 132.  Fobes requested a hearing, which was held on March 12, 2014, via video, with Fobes appearing in Gulfport, Mississippi, and the ALJ presiding from St. Louis, Missouri.  *Id.* at 65.  On May 12, 2014, the ALJ issued a decision finding that Fobes was not disabled.  *Id.* at 13.  The Appeals Council denied his request for review on July 22, 2015, *id.* at 1, and this action followed.

## II.  MEDICAL HISTORY

The Court has determined that a detailed recitation of the medical records is not necessary because the parties summarized Fobes's records in their briefs, and the ALJ provided thorough summaries in her decision.  Nevertheless, a review of the observations and evaluations of certain examiners will aid in the consideration of this case.

On October 12, 2011, Fobes underwent a neurology consultation with Dr. William F. Seith, Jr.  *Id.* at 443-444.  Dr. Seith commented that the labs revealed no inflammatory markers,

and imaging showed no significant spinal pathology. Dr. Seith's impression was that Fobes had chronic pain syndrome, and there was "[n]o neurologic disease or deficit defined or suspected." *Id.* at 444. In his impressions, he also made the following statement, "? symptomatic sarcoid (doubt)." *Id.* Dr. Seith requested a rheumatology consultation for Fobes. *Id.*

Beginning in February 2, 2012, a rheumatologist, Dr. Peter B. Sinks, treated Fobes with various medications, including prednisone, for his joint pain and swelling in his hands. *Id.* at 299, 314, 426. At that same visit, Dr. Sinks noted that Fobes's past medical history was remarkable for a number of conditions, including chronic fatigue syndrome. *Id.* at 427. In May 2012, Dr. Sinks's assessment was "arthropathy associated with sarcoid, possible early diabetes with peripheral polyneuropathy[.] May need w/u for diabetes (and perpheral [sic] neuropathy)." *Id.* at 316. In October 2012, Dr. Sinks's impression was "[s]arcoidosis with some swelling and stiffness of hands." *Id.* at 299. Dr. Sinks also commented that Fobes's labs were "OK in general." *Id.* at 298.

On March 1, 2012, Dr. Vasanthi K. Nalluri examined Fobes as a part of his request for service-related benefits from the Veteran's Administration. *Id.* at 336-424. With regard to Fobes's arthropathy of elbows, hands, and hips, Dr. Nalluri concluded that

> [u]pon review of update the diagnosis of sarcoid arthropathy is based upon suggestive clinical, imaging, synovila fluid and in selected cased [sic] synovial tissue biosy [sic]. With his long history of sarcoid, clinically arthroapathy [sic] in elbows, hands, hips at least as liklely [sic] as not caused by or realted [sic] to his Sc Sarcoidosis. [M]ild funcitonal [sic] limitations with physical type of activity, less likely as not effects [sic] light sedentary work.

*Id.* at 339. Dr. Nalluri went on to find that Fobes had arthropathy of both hips, *id.* at 406, with functional impairment based on pain in movement. *Id.* at 411. The doctor also found that Fobes had degenerative arthritis of both knees and a plantar heel spur. *Id.* at 388, 405. The doctor did

not diagnose arthritis in Fobes's hands, but did find that he experiences 4/5 grip strength in both hands, and occasionally uses gloves as an assistive device.  *Id.* at 382, 385.  The doctor did, however, note that Fobes had been diagnosed with arthropathy of the hands, right elbow and forearm on February 29, 2012, with pain on movement.  *Id.* at 365, 370, 375.  Nevertheless, the doctor found that Fobes's elbow/forearm, hand, thumb, and finger conditions did not impact his ability to work.  *Id.* at 374, 386.

Fobes received periodic primary care examinations from Dr. Pravinchandra Saija.  At examinations on February 17, 2012, and November 1, 2012, Dr. Saija thoroughly discussed and evaluated Fobes's physical conditions.  *Id.* at 289, 327.  At both exams, Dr. Saija noted that Fobes has the following medical problems:  sarcoid, chronic lower back pain with tingling in left lower extremity, industrial injury left hand, GERD, hyperlipidemia, hyperglycemia, constipation, chronic bilateral knee pain, right shoulder surgery (three times), left shoulder surgery (one time), and renal insufficiency.  *Id.*  The Court observes that on both occasions Dr. Saija did not list chronic fatigue syndrome as one of Fobes's conditions, *id.,* although he twice mentioned that another doctor's "impression" was that Fobes had chronic fatigue syndrome.  *Id.* 292, 330.  Among his many notes about Fobes's condition, Dr. Saija observed that Fobes had normal labs, and that he "required steroid off and on" for his sarcoid.  *Id.* at 292.  A July 27, 2012, addendum to the February 2012 visit reported evidence of normal lab results.  *Id.* at 332.

On January 30, 2013, J.D. Matherne, Ph.D., performed a psychological consultation on Fobes.  *Id.* at 614-619.  Dr. Matherne concluded that Fobes "[o]verall shows evidence of a major depressive disorder without psychosis."  *Id.* at 618.  The psychologist concluded that Fobes "does appear to be moderately impaired in his ability to perform routine, repetitive tasks.  He is

moderately impaired in his ability to interact with co-workers and supervisors." *Id.* at 619.  Dr. Matherne commented that Fobes had "fair concentration" and had "average to bright normal intelligence." *Id.*  Dr. Matherne noted that Fobe's "gait and posture were normal.  He walked without any support or assistance from the waiting room into" his office. *Id.* at 617.  On Axis I, Dr. Matherne diagnosed major depressive disorder, moderate, recurrent without psychosis; anxiety disorder; pain disorder associated with both psychological factors and general medical condition. *Id.* at 619.  Dr. Matherne found mixed personality disorder on Axis II. *Id.*

On February 5, 2013, a consultative medical doctor, Dr. Robert L. Cobb, found that Fobes had post-traumatic low back pain, with history of lumbar disc disease; post-traumatic bilateral shoulder pain, status post-surgical repairs; cervicalgia; history of sarcoidosis; and chronic bronchitis secondary to tobacco abuse. *Id.* at 627.  On the same day, x-rays of his lumbar spine revealed degenerative spondylosis and facet joint arthrosis at L5-S1. *Id.* at 622. Dr. Cobb commented that "[i]n the past, [Fobes] has required a cane or walker fairly regularly, but is getting to the point that [he] just intermittently uses a cane when he is out and about.  It helps to ease his lower back on the left, where it hurts the most." *Id.* at 626.  The doctor limited Fobes in his ability to lift and carry with his arms to five pounds occasionally with the right arm, ten pounds occasionally with the left arm, and fifteen pounds with both arms, limited to no higher than waist level. *Id.* at 627.  Dr. Cobb concluded that Fobes "should be able to be ambulatory 15-20 mins. at a time. . . 3-4 hrs. out of an 8-hr. workday, and sit for about 30 mins. at a time. . . 4-5 hrs. out of an 8-hr. workday.  He should be able to infrequently bend at the waist." *Id.* (ellipses in original).

### III.  HEARING AND DECISION

In her May 12, 2014, decision, the ALJ evaluated Fobes's impairments using the familiar sequential evaluation process[2] and found that he has the severe impairments of sarcoidosis with joint and lung involvement, degenerative disc disease of the lumbar spine, shoulder disorders, chronic fatigue syndrome, depression, anxiety, and a personality disorder. *Id.* at 15. The ALJ found that Fobes has the non-severe impairments of renal failure, acid reflux, multiple knee problems, and sleep disruptions/mild obstructive sleep apnea. *Id.* at 16.

The ALJ compared Fobes's conditions to the Listings and determined that his back and shoulder impairments did not satisfy the criteria for Listings 1.02 (major dysfunction of a joint) or 1.04 (disorders of the spine). *Id.* The ALJ evaluated his mental impairments and found that they did not meet the requirements of sections 12.04 (affective disorders), 12.06 (anxiety

---

2. In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

> (1)     whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

> (2)     whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

> (3)     whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

> (4)     whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

> (5)     whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.920. The analysis ends at the point at which a finding of disability or non-disability is required. The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558,

disorders), and 12.08 (personality disorders).  *Id.*  The ALJ determined that he has a mild

restriction in the activities of daily living, moderate difficulties in social functioning, mild

difficulties in concentration, persistence and pace, and no episodes of decompensation.  *Id.*  at

16-17.  The ALJ, furthermore, concluded that Fobes did not meet the criteria for "paragraph C"

of sections 12.04 and 12.06.

After considering the record, the ALJ determined that Fobes had the following Residual

Functional Capacity ("RFC"):

> [T]hrough the date last insured, the claimant had the residual functional capacity
> to lift/carry and push/pull up to 20 pounds occasionally and up to 10 pounds
> frequently; stand/walk for six hours in an eight-hour workday, 30 minutes at a
> time; and sit for six hours in an eight-hour workday, 30 minutes at a time.  He can
> occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds.  He
> can occasionally balance, stoop, kneel, crouch, and crawl.  The claimant can also
> occasionally reach overhead with both upper extremities.  He must avoid
> temperature extremes; unprotected heights; hazardous machinery; and
> concentrated exposure to dust, fumes, gases, odors, poor ventilation, and
> temperature extremes.  Furthermore, the claimant can understand, remember, and
> carry out simple and some detailed (up to three-step) tasks and job instructions
> and can sustain concentration and persistence for minimum two-hour periods.
> The claimant can have occasional interaction with supervisors, co-workers, and
> the general public.

*Id.* at 18.

Considering the foregoing RFC, the ALJ determined that Fobes is unable to perform any

of his past relevant work as a process engineer at a plastics plant, a maintenance engineer, and a

service technician.  *Id.* at 23.  The ALJ observed that Fobes was born on August 3, 1965, and he

was forty-eight, or a "younger individual age 18-49" on the date he was last insured, December

31, 2013.  *Id.* at 23-24.  The ALJ concluded that Fobes has a high school education and is able to

communicate in English.  *Id.* at 23. The ALJ also determined that transferability of job skills was

564 (5th Cir. 1995).

not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding of "not disabled," whether or not Fobes has transferable job skills. *Id.*

Considering these factors, and with the assistance of a vocational expert, the ALJ identified several jobs that exist in significant numbers in the national economy that Plaintiff can perform, as follows:

1. Mail sorter, which is considered light and unskilled.

2. Silverware wrapper, which is considered light and unskilled; and

3. Bench assembler, which is considered light and unskilled.

*Id.* at 23-24. At the hearing, the vocational expert also identified the following jobs at the sedentary exertional level that Fobes could perform:  surveillance monitor, order taker, and envelope addresser.  *Id.* at 24, 93.  Thus, the ALJ concluded that Fobes has not been under a disability from October 6, 2010, through December 31, 2013, the date he was last insured.  *Id.* at 24.

## IV. STANDARD OF REVIEW

This Court's review is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971), and whether the correct legal standards were applied, 42 U.S.C. § 405(g) (2006). *Accord Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). The Fifth Circuit has defined the "substantial evidence" standard as follows:

> Substantial evidence means more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where

there is a "conspicuous absence of credible choices" or "no contrary medical evidence."

*Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).  In applying the substantial evidence standard, the Court must carefully examine the entire record, but must refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.  *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).  Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.  *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).  Hence, if the Commissioner's decision is supported by the evidence, and the proper legal standards were applied, the decision is conclusive and must be upheld by this Court.  *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994), *overruled on other grounds, Sims v. Apfel,* 530 U.S. 103 (2000).

<u>V. DISCUSSION OF THE ALLEGED ERRORS<br> AND APPLICABLE LAW</u>

Plaintiff argues that the ALJ's decision is unsupported by substantial evidence and raises the following issues:

1. Whether the ALJ inconsistently and inappropriately questioned the Claimant's credibility and substituted his own opinions for that of the rheumatologist and other treating physicians when he erroneously stated there were no significant findings relevant to Claimant's joint and gout pain secondary to sarcoidosis?

2. Whether the ALJ inappropriately substituted his lay opinion for that of Dr. Cobb, the Consultative Medical Examiner, and failed to provide any objective reasoning for rejecting his findings.

3. Whether the ALJ relied upon an alleged inconsistency between the Claimant's physical condition at his psychological exam and physical exam which did not exist.

4. Whether the ALJ inappropriately required the Claimant to produce evidence of a worsening of his condition since denial of his previous application, in violation of AR 98-4(6).

˅10˅

5.  Whether the ALJ failed to consider the effects of Claimant's chronic fatigue syndrome and OSA and the effects upon the Claimant's ability to attend work regularly.

6.  Whether the ALJ failed to consider the combined effects of the Claimant's arthopathy of the elbow, hands, and shoulder disorders, which caused the Claimant to have impairment in his ability to use his hands for light to sedentary work.

[9] at 1-2.

A.  Did the ALJ inconsistently and inappropriately question the Claimant's credibility and substitute his own opinions for that of the rheumatologist and other treating physicians?

Plaintiff argues that the record supports his contention that his sarcoidosis with joint involvement is well-documented, therefore the ALJ erred when she did not accord him appropriate credibility.  Fobes argues that the ALJ substituted her judgment for the doctors when she stated that "there is no evidence of any significant findings" related to his joint and gout pain secondary to sarcoidosis and that the record was unclear as to why he was prescribed prednisone for arthritis.  Finally, he asserts that if the ALJ concluded that the medical evidence was inconclusive related to sarcoid arthropathy, she should have ordered another consultative evaluation.

Turning to the plaintiff's credibility argument, the Court notes that the evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who had an opportunity to observe whether he or she seemed to be disabled.  *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988).  To prove disability resulting from pain, an individual must establish a medically determinable impairment that is capable of producing disabling pain.  20 C.F.R. §§ 404.1529(a), 416.929(a)(1997); *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995).  Once a

medical impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity.  *Id.*

This argument goes to the heart of the Court's standard of review in this appeal.  That is, conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.  *Martinez*, 64 F.3d at 174. While there is some evidence supporting Fobes's claims of joint and gout pain, some of which could be attributable to his allegations of arthropathy caused by sarcoidosis, there is also evidence supporting the ALJ's decision on this issue.  The ALJ discussed the conclusions of multiple examiners, noted laboratory results, reviewed his condition at treating and consultative examinations, and discussed the conclusions of examiners.  The ALJ looked at the lack of laboratory test results that would have established sarcoidosis as the cause of his joint pain and considered the lack of "inflammatory markers" in testing.  While the Plaintiff points out one instance of testing that he argues establishes that his joint arthropathy was "likely related to sarcoidosis," [5] at 339, the ALJ pointed to multiple other medical evaluations in the record that provide competing evidence.  Moreover, the ALJ had the opportunity to observe Fobes during the hearing. Because the foregoing evidence shows that the ALJ considered Fobes's complaints of pain along with his activities and the medical evidence, the undersigned finds that the record contains substantial evidence to support the ALJ's decision and must give considerable deference to the ALJ's evaluation of the plaintiff's credibility and severity of limitations. *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991).

Fobes also argues that the ALJ should have ordered a consultative examination.  Under the applicable regulations, if sufficient medical or other evidence is not provided by the claimant, the secretary is required to make a decision based on the information available.  See 20 C.F.R. §

404.1516 (2016).  In some cases, however, a consultative examination is required to develop a full and fair record.  20 C.F.R. § 404.1517 (2016).

Nevertheless, the ALJ has the discretion to determine if such an examination is required. The Fifth Circuit has stated "[t]o be very clear, 'full inquiry' does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision."  *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)(emphasis in original); *see also Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987). While an "administrative law judge has a duty to fully and fairly develop the facts relative to a claim for disability benefits," reversal is not warranted for an ALJ's failure to fully and fairly develop the record "unless the claimant shows that he or she was prejudiced by the ALJ's failure."  *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000).  Prejudice may be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision. *See Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984).

In this case, the undersigned finds that there was sufficient medical evidence in the record on which the ALJ could base her RFC determination, thus the ALJ did not err by not ordering a consultative examination.  Moreover, Fobes has not shown any additional evidence that would have been produced if the ALJ had ordered a consultative examination or that any such additional evidence might have led to a different decision.  Accordingly, this issue has no merit.

B.  Did the ALJ inappropriately substitute her lay opinion for that of Dr. Cobb, the Consultative Medical Examiner, and also fail to provide any objective reasoning for rejecting his

findings?

Fobes argues that the ALJ improperly substituted her opinion, without giving any objective reasoning, for that of Dr. Cobb, a consultative examining physician, when the ALJ gave limited weight to Dr. Cobb's conclusions related to the amount of weight he could lift with each arm and with both arms.  Plaintiff also argues that the ALJ, in error, gave more weight to the psychological examiner's observations of his physical limitations than she did to Dr. Cobb's opinions.

"The Secretary, not the courts, has the duty to weigh the evidence, resolve material conflicts in the evidence, and decide the case." *Chaparro v. Bowen*, 815 F.2d 1008, 1010 -1011 (5th Cir. 1987)(citing *Carry v. Heckler,* 750 F.2d 479, 482 (5th Cir. 1985)).  Under the regulations and case law, the determination of residual functional capacity is the sole responsibility of the ALJ. *See Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir.1995).

In this case, the ALJ looked at the relevant evidence and weighed the opinions and records of the various medical sources to determine the RFC.  While she accorded some opinions more weight than others, the ALJ did not err.  In the case of Dr. Cobb, the ALJ pointed out inconsistencies with other examinations and medical records.  What Fobes "characterizes as the ALJ substituting his opinion [for that of a doctor] is actually the ALJ properly interpreting the medical evidence to determine his capacity for work." *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012).

Furthermore, the ALJ observed, without specifically describing them, inconsistencies in Fobes's "physical presentations," as noted in the reports of the consultative psychological examiner, Dr. Matherne, and the consultative medical examiner, Dr. Cobb.  [5] at 21.  Dr.

Matherne noted that Fobes's "gait and posture were normal.  He walked without any support or assistance from the waiting room into" his office.  *Id.* at 617.  Dr. Cobb noted that Fobes "ambulates without assistance, with a limp favoring the left. . . . He brought a cane to this exam." *Id.* at 626.  In the Court's view, the ALJ simply stated the obvious: there were inconsistencies in his physical presentations between the two examinations.  Once again, this observation is an example of the "ALJ properly interpreting the medical evidence" to determine Fobes's RFC, and it does not provide the basis for reversal.

Moreover, while the ALJ gave "more weight" to the opinion of the consultative psychological examiner, Dr. Matherne, the court does not interpret the ALJ's opinion to give the consultative psychological examiner's opinion "more weight" with regard to Fobes's *physical* condition than he did to the consultative medical examiner's opinion on Fobes's *physical* condition.  To the contrary, in the process of discussing the medical and psychological opinions in the evidence, the ALJ simply assigned what weight she would give an examiner's opinion as to the condition he examined – whether it was physical or psychological.  In this case, the ALJ gave "limited weight" to Dr. Cobb's opinion as to Fobes's physical condition, and the ALJ gave "great weight" to the psychological examiner's opinion as to Fobes's psychological condition, not his physical condition.  The ALJ also looked at other opinions in the record and assigned them varying weights, taking into account whether the medical records supported the conclusions.  "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000)(internal citations and quotations omitted).  Accordingly, this argument does not provide a basis for reversal of the Commissioner's decision.

C.  Did the ALJ rely upon an alleged inconsistency between the Claimant's physical

condition at his psychological exam and physical exam which did not exist?

Restating the above argument slightly differently, Plaintiff asserts that the ALJ attacked

his credibility by commenting on his differing gait and posture between the consultative

psychological examination conducted by Dr. Matherne in January 2013 and the consultative

medical examination conducted by Dr. Cobb in February 2013.  He also argues that the ALJ

unjustly attacked his credibility when she stated that no assistive device, either cane or walker,

had been prescribed for him.

Once again, conflicts in the evidence and credibility assessments are for the

Commissioner and not the courts to resolve.  *Martinez*, 64 F.3d at 174.  As discussed above, the

ALJ simply noted the differences in gait and posture between the examinations.

As to whether a cane or other assistive device was prescribed, Plaintiff points to a July 2,

2009, doctor's visit, at which Fobes expressed to his physician that he "want[ed] to try a single

point cane and a 4 wheeled walker." [5] at 552.  But the record does not indicate that the

physician actually prescribed a cane or walker.  *See id.*  Also, the Court observes that this

discussion regarding use of assistive devices occurred outside the relevant time period of

October 5, 2010, to December 31, 2013.  The ALJ's statement appears to be accurate,

particularly based on the records for the relevant time period.  However, even if the ALJ's

statement was inaccurate, the undersigned finds that the statement would constitute, at most,

harmless error.  *Morris v. Bowen,* 864 F.2d 333, 334-335 (5th Cir.1988)("The procedural

improprieties alleged by [plaintiff] will therefore constitute a basis for remand only if such

improprieties would cast into doubt the existence of substantial evidence to support the ALJ's

decision.").  "Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected." *Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir.1988).  Because substantial evidence supports the ALJ's determination on this issue, it does not provide a basis for reversal.

<u>D.  Did the ALJ inappropriately require the Claimant to produce evidence of a worsening of his condition since denial of his previous application, in violation of AR 98-4(6) and AR 00-1(4)?</u>

Fobes argues that the ALJ, in error, required him to produce evidence of a worsening condition since the denial of his previous application.  He argues that the ALJ must consider this present claim *de novo* and cannot attack his credibility based on findings in a prior proceeding.

Plaintiff does not explain in which way AR 00-1(4) applies to this case.  However, in relevant part, AR 00-1(4) states that:

> [w]hen adjudicating a subsequent disability claim arising under the same or a different title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances.

AR 00-1(4), 2000 WL 43774, *4 (Jan. 12, 2000).

In this case, Plaintiff is attempting to create error where there is none.  The ALJ stated that "there is no evidence of significant worsening in the claimant's condition since the date of the prior Administrative Law Judge's decision."  This statement was made in the context of a paragraph where the ALJ pointed to various aspects of the record covering the unadjudicated period that did not support the claimant's statements regarding his condition.  As stated previously, conflicts in the evidence and credibility assessments are for the Commissioner and

not the courts to resolve.  *Martinez*, 64 F.3d at 174.  With this statement, the ALJ followed AR 00-1(4) by acknowledging the existence of a prior finding and by giving it "appropriate weight in light of all relevant facts and circumstances."  Accordingly, because the ALJ was making a credibility finding based upon the evidence, this argument does not provide a basis for reversal.

Turning to Acquiescence Ruling ("AR") 98-4(6), it states, in relevant part, that "when adjudicating a subsequent disability claim involving an unadjudicated period, SSA considers the facts and issues *de novo* in determining disability with respect to the unadjudicated period." *Kirkwood v. Astrue*, 2009 WL 723535, *5 (N.D. Miss. Mar. 16, 2009)(quoting AR 98-4(6)).

The ALJ's decision demonstrates that she considered the claim *de novo*.  To reach her decision, she reviewed medical records and evidence from the relevant time period, October 6, 2010, through December 31, 2013, the date Fobes was last insured.  She did not, as Plaintiff essentially argues, start her analysis with his RFC as determined in the last decision, and work from there.  This argument is without merit and fails to provide a basis for reversal.

E.  Did the ALJ fail to consider the effects of Claimant's chronic fatigue syndrome and OSA and the effects upon the Claimant's ability to attend work regularly?

Plaintiff argues that the ALJ failed to assess the effects of his chronic fatigue syndrome upon his ability to work regularly.[3]  Although the ALJ did not separately discuss chronic fatigue syndrome as it relates to Fobes's RFC, Fobes's ability to attend work regularly was encompassed within the RFC determination.  *See* 20 C.F.R. § 404.1545(b)("When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine

─────────────

3. In the heading of the allegation of error, Plaintiff also asserts that the ALJ failed to consider the effects of OSA, or obstructive sleep apnea, on Fobes's ability to work.  However, Plaintiff fails to support this assertion with any explanation, argument, or reference to case law.

your residual functional capacity for work activity on a regular and continuing basis.").  The ALJ

acknowledged that Plaintiff's "medically determinable impairments could reasonably be

expected to cause the alleged symptoms," but she set forth her reasoning, based on the record,

for finding that "claimant's statements concerning the intensity, persistence, and limiting effects

of these symptoms are not entirely credible."  [5] at 21.  Because Plaintiff has failed to point to

any medical evidence that suggests that his chronic fatigue syndrome causes additional

functional limitations that are not already accounted for in the RFC, the undersigned finds that

the ALJ's decision is supported by substantial evidence, and this argument does not provide a

basis for reversal or remand.  *Catching v. Colvin*, 545 Fed. App'x 277 (5th Cir. 2013).

> F. Did the ALJ fail to consider the combined effects of the Claimant's arthropathy of
>
> the elbow, hands, and shoulder disorders, which caused the Claimant to have
>
> impairment in his ability to use his hands for light to sedentary work?

Finally, Plaintiff argues that the ALJ failed to consider the combined effect of his

arthropathy of the elbow, hands, and shoulder disorders as it relates to his ability to use his hands

for light to sedentary work.  Plaintiff argues that the medical records show that he has moderate

functional limitations in both shoulders, [5] at 359, paresthesia/dysesthesia and numbness in both

upper extremities, *id.* at 341, and decreased sensation to light touch in both hands and fingers.

*Id.* at 343.  These conclusions were reached during a February 2012 comprehensive examination

related to his quest for veteran's benefits.  *Id.* at 336.

While the records bear out these medical conclusions, Fobes fails to point to other

medical determinations related to his elbows and hands that were obtained at the same February

---

Accordingly, the Court will not make the argument for Plaintiff and declines to address it.

2012 doctor's visit.  At that evaluation, the doctor determined that there was no objective evidence of painful motion in either elbow.  *Id.* at 367.  The doctor also determined that imaging studies of the elbows did not document arthritis, and that his elbow condition did not impact his ability to work.  *Id.* at 374.

With regard to Fobes's hands, the doctor found that he had no functional limitations of motion or evidence of painful motion for any fingers or thumb, he had not lost the ability to oppose the thumb, his finger flexion was not affected, his finger extension was not limited, he demonstrated no evidence of painful motion in his fingers, he was able to perform repetitive use testing, and he demonstrated no additional limitation of motion for fingers after the testing.  *Id.* at 376-380.  Moreover, the evaluating doctor specifically concluded that Fobes's hand, thumb, and finger conditions did not impact his ability to work.  *Id.* at 386.

Finally, in February 2013, the consultative medical examiner, Dr. Cobb, found "no abnormalities in the upper extremities, except at the shoulders."  *Id.* at 627.

The RFC accounted for Fobes's shoulder, elbow, and hand limitations by limiting the amount of weight he could carry and limiting his overhead reach with both extremities to "occasional."  Because the medical evidence did not demonstrate that he had functional limitations in the use of his elbows, hands, and fingers, and Dr. Cobb described him as having "no abnormalities in the upper extremities, except at the shoulders," there is substantial evidence in the record to support the ALJ's decision not to include additional, specific limitations in the RFC related to Fobes elbows, hands, and fingers.  Accordingly, this argument does not provide a basis for reversal or remand.

˘20˘

<u>VI. CONCLUSION</u>

For the reasons discussed in this Report and Recommendation, the undersigned finds that the ALJ's decision that Fobes is not disabled is supported by substantial evidence.  Therefore, the undersigned finds that the Commissioner's decision should be affirmed, that Plaintiff's Motion [8] should be denied, and that this matter should be dismissed with prejudice.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636, *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

RESPECTFULLY SUBMITTED, this the 30th day of January, 2017.

        /s/  F. Keith Ball
UNITED STATES MAGISTRATE JUDGE